IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| DAVID JAMES LAPOINTE,<br><br>              Plaintiff,<br><br>   vs.<br><br>NANCY BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>          Defendant. | CV 16-109-GF-JTJ<br><br>**ORDER GRANTING SUMMARY<br>JUDGMENT IN FAVOR OF<br>PLAINTIFF AND REMANDING<br>FOR CALCULATION AND<br>AWARD OF BENEFITS** |

Plaintiff James LaPointe (Mr. LaPointe) appeals the final decision of the

Commissioner of the Social Security Administration (Commissioner) denying his

application for Disability Insurance Benefits under Title II of the Social Security

Act, 42 U.S.C. §§ 401-433, after a hearing before an administrative law judge

(ALJ). For the reasons set forth below, the Commissioner's decision is

REVERSED and REMANDED.

## I. FACTS AND PROCEDURAL HISTORY

Mr. LaPointe brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner denying his application for disability insurance benefits. Mr. LaPointe filed his application for disability insurance benefits on July 9, 2015, alleging a disability onset date of March 16, 2006. (Doc. 11 at 211-212) Mr. LaPoint was 49 years old when he filed his application. (*Id.*)

Mr. LaPointe's highest level of education is 3 years of college. (*Id.* at 258) Mr. LaPointe's work history consists of his service to his country as a member of the United States Air Force from March 1986 to January 2009. (*Id.* at 258) On March 15, 2006, Mr. LaPointe fell from a hangar roof in Iraq sustaining severe injuries. (*Id.* at 26, 54) Before this fall, Mr. LaPointe worked as an explosive ordnance disposal tech working ten hours a day five days a week. (*Id.* at 257-259) After this fall, Mr. LaPointe's conditions prevented him from further working in the United States Air Force other than light and modified duty consisting of two hours of paper work per day until he was discharged in 2009. (*Id.* at 56-57, 257-259) The Department of Veteran Affairs (VA) assigned a "permanent 100% disability evaluation" to Mr. LaPointe for his "service connected disability/disabilities effective September 26, 2014." (*Id.* at 244-252) The VA determined that Mr. LaPointe had the following disabilities giving rise to its 100% permanent disability evaluation: PTSD/insomnia (70%), sleep apnea (50%), post

right hip arthroscopy (10%), migraine headaches with visual impairment (10%), degenerative disco genic disease of the C6-C7 (10%), left ankle/heal subtalar fusion with fractured calcaneus with degenerative joint disease (30%), and lumbar spine degenerative disco genic disease with left L4-L5 broad-based disc herniation (10%). (*Id.* at 246)

When he filed his application for disability benefits, Mr. LaPointe claimed that he was disabled due to (1) a left foot/ankle injury consisting of a shattered heal and cartilage damage requiring a partial fusion surgery resulting in him experiencing left foot/ankle pain when walking or bearing weight; (2) herniated discs and compression fractures in his back that "makes bending, turning, lifting and leaning painful"; (3) compressed cervical spine causing neck pain; (4) right hip "feels like it wants to pop out of joint doing bending, sitting and other motions"; (5) right elbow scar tissue that causes numb fingers; (6) traumatic brain injury causing cognitive issues; (7) severe migraine headaches; (8) post traumatic stress disorder/anxiety which combine to cause problems with concentration, listening to long verbal instructions, directions and focusing, and causing him to avoid social situations and crowds." (Doc. 11 at 257, 283)

Mr. LaPointe's claim was denied initially and on reconsideration, and he filed a timely request for a hearing before and Administrative Law Judge (ALJ).

(*Id.* at 153-154)  An ALJ conducted a video hearing on March 22, 2016, at which

Mr. LaPointe appeared with counsel. (*Id.* at 40-121)   The ALJ denied Mr.

LaPointe's application for benefits by decision dated June 27, 2016.  (*Id.* at 20-34)

Mr. LaPointe timely requested that the Commissioner review the ALJ's

decision on August 18, 2016 (*Id.* at 15)  The Appeals Council for the

Commissioner denied Mr. LaPointe's request for review on September 20, 2016,

making the ALJ's decision the Commissioner's "final decision."  (*Id.* at 1-6)

Mr. LaPointe timely filed a complaint on October 14, 2016, seeking judicial

review of the Commissioner's decision. (Doc. 1)  The Court has jurisdiction over

this action under 42 U.S.C. § 405(g).  The parties consented to the undersigned

conducting all further proceedings in this matter. (Doc. 5)  The Great Falls

Division of the District of Montana is the proper venue because Mr. LaPointe

resides in Cascade County, Montana. (Doc. 1 at 2); 42 U.S.C. 405(g); Local Rule

1.2(c)(2).

Mr. LaPointe filed an opening brief on March 13, 2017, requesting that the

Court reverse the Commissioner's decision and remand for an immediate award of

benefits or, in the alternative, remand for a further hearing. (Doc. 14) The

Commissioner filed a response brief on April 12, 2017, requesting that the Court

affirm her decision.  (Doc. 15)  Mr. LaPointe filed a reply brief on April 26, 2017.

(Doc. 16)  The motion is ripe for decision.


## II.    STANDARD OF REVIEW

The Court's review is limited.  The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).  Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance." *Desrosiers v. Sec. of Health and Hum. Services*, 846 F.2d 573, 576 (9th Cir. 1988).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193

(citing *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999)). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (quoting *Edlund*, 253 F.3d at 1156).Where evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. *Thomas v. Barhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Green v. Sheckler*, 803 F.2d 528, 530 (9th Cir. 1986). The Court may reject the findings not supported by the record, but it may not substitute its findings for those of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

### III.  BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months"; and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but also

cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A)-(B)).

The Commissioner's regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five. *Id.* at 954. The five steps of the inquiry are:

1.  Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2.  Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3.  Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4.  Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5.  Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Id.*

\

# IV.  BACKGROUND

## A.    ALJ's determination

At step one, the ALJ decided that Mr. LaPointe had not engaged in substantial gainful activity since March 16, 2006, the alleged onset date of his disability. (Doc. 11 at 22)  At step two, the ALJ determined that Mr. LaPointe has the following severe impairments: fractures of the lower extremity, spine disorder, and anxiety disorder/posttraumatic stress disorder. (*Id.* at 22)

At step three, the ALJ determined that Mr. LaPointe did not have an impairment, or combination of impairments, that met or was medically equal to one of the listed impairments. (*Id.* at 23)

Before considering step four, the ALJ assessed Mr. LaPointe as having had the residual functional capacity (RFC), through the date last insured to perform sedentary work as defined in 20 C.F.R. § 1567(a) with the following limitations: Mr. LaPointe would have had to use a cane to walk more than 50 feet at a time; from a mental standpoint, he was capable of performing simple repetitive work activity on a sustained basis.  (*Id.* at 25-32) The ALJ also determined that Mr. LaPointe would have had full use of the upper extremities and no problem with

fingering, handling or gripping. (*Id.*)

At step four, the ALJ determined that with his RFC, Mr. LaPointe was not capable of performing past relevant work as U.S. Air Force Explosive Ordinance disposal Technician/Ordnance Artificer. (*Id.* at 32-33)

At step five, the ALJ made an alternative determination that, considering Mr. LaPointe's age, education, work experience, and RFC, Mr. LaPointe was capable of making a successful adjustment to other work that existed in significant numbers in the national economy as a patcher, toy stuffer, document preparer and a touch-up screener. The ALJ therefore determined that Mr. LaPointe has not been under a disability since March 16, 2006, the claimed onset date of his disability, through December 31, 2013, the date last insured. (*Id.* at 33).

**B.    Mr. LaPointe's Position**

Mr. LaPointe argues the Court should reverse the Commissioner's decision and remand the case to the Commissioner for the immediate award of benefits or further hearing because:

1.    The ALJ erred at the second step of the sequential analysis in determining that his chronic hip pain, right elbow/wrist injury, headaches, depression, and brain injury were non-severe impairments because substantial evidence does not support this determination. (Doc. 14 at 10-13)

2.    The ALJ's assessment of his RFC is erroneous because it does not consider the combination of his impairments and it is therefore not

9

supported by substantial evidence.  (*Id.* at 13-17)

3.      The ALJ erred in disregarding his testimony concerning pain, fatigue and limitations because the reasons the ALJ provided for doing so are not supported by substantial evidence.  (*Id.* 17-19)

4.      The ALJ erred in determining that he has the RFC to perform substantial gainful activity because this determination is not supported by substantial evidence.  (*Id.* at 19-21)

## C.      **The Commissioner's Position**

The Commissioner argues that the Court should enter summary judgment in

her favor because:

1.      The ALJ did not error in determining Mr. LaPointe's severe impairments at step two of the sequential analysis because the ALJ's determination is supported by substantial evidence and any error at step two is harmless because step two was resolved in Mr. LaPointe's favor.  (Doc. 15 at 4-8)

2.      The ALJ's did not error in assessing Mr. LaPointe's RFC because the ALJ's assessment is supported by substantial evidence and is not based upon legal error. (*Id.* at 8-17)

3.      The ALJ did not error in discounting Mr. LaPointe's subjective complaint testimony because the ALJ gave clear and convincing reasons supported by substantial evidence for doing so.  (*Id.* at 18-23)

4.      The ALJ did not error in determining that Mr. LaPointe possesses the RFC to perform substantial gainful activity because substantial evidence supports this determination.  (*Id.* at 23-26)

## V.  ANALYSIS

The Court determines after a review of the record that the ALJ committed

legal error by failing to provide specific, clear and convincing reasons for finding

Mr. LaPointe's testimony regarding his pain and limitations incredible. The Court

also determines that if Mr. LaPointe's testimony regarding his pain and limitations

is taken as true, there is no doubt that Mr. LaPointe is disabled and entitled to

Social Security benefits. Thus, under the Credit-as-True rule, the Court remands

this case to the ALJ for the calculation and award of benefits.

### A.    Credibility

#### 1.    Legal standards

An ALJ engages in a two-step analysis to determine whether a claimant's

testimony regarding subjective pain or symptoms is credible. "First, the ALJ must

determine whether the claimant has presented objective medical evidence of an

underlying impairment 'which could reasonably be expected to produce the pain or

other symptoms alleged.' " *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)

(citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). In this

analysis, the claimant is not required to show "that her impairment could reasonably

be expected to cause the severity of the symptom she has alleged; she need only show

that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*,

80 F.3d 1273, 1282 (9th Cir.1996).  Nor must a claimant produce "objective medical

evidence of the pain or fatigue itself, or the severity thereof." *Garrison,* 759 F.3d at

1014.

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014-1015 (citing *Smolen*, 80 F.3d at 1281); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir.2006) ( "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). This is not an easy requirement to meet: "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison,* 759 F.3d at 1015 (citing *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir.2002).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning

the nature, severity, and effect of the alleged symptoms. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

## 2. ALJ's credibility determination

The ALJ determined that Mr. LaPointe's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence of record. (Doc. 11 at 31) Although the ALJ discussed Mr. LaPointe's medical record at length he did not explain *how* any of medical evidence was inconsistent with Mr. LaPointe's statements. (*Id.* at 26-31) Without such an explanation, the Court is left without any meaningful basis to review the ALJ's reasoning. Furthermore, the ALJ did not specifically identify what testimony from Mr. LaPointe was not credible as he was required to do so.

An ALJ does not provide clear and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). It is not the role of this Court to guess what the ALJ was thinking in reviewing all the medical evidence in the record, and concluding that it is inconsistent with claimant's statements that are not specifically identified. Thus, this initial portion of the ALJ's credibility discussion does not provide a specific, clear and

convincing reason for rejecting Mr. LaPointe's testimony.

The ALJ further determined that Mr. LaPointe's described daily activities are not limited to the extent one would expect given the complaints of disabling symptoms and limitations. (Doc. 11 at 31) The ALJ discussed that although Mr. LaPointe complained of being unable to work he attended courses for automobile refinishing and repair and to be a motorcycle mechanic. (*Id.*) In so doing, the ALJ ingnored Mr. LaPointe's testimony that he was afforded a twenty minute break every hour by the instructor because the instructor knew of Mr. LaPointe's symptoms and limitations. (*Id.* at 95-96) It goes without saying that a twenty minute break every hour while attending retraining courses is not inconsistent with Mr. LaPointe's statement that he would not be able to work because, as the vocational expert testified the Mr. LaPointe's hearing before the ALJ, employers in the national economy do not provide employees twenty minute breaks every hour, but rather only provide employees one break in the morning, a lunch break, and one break in the afternoon. (*Id.* at 118-119) Therefore, the Court determines that this reason the ALJ proposed for discrediting Mr. LaPointe's statements concerning the intensity, persistence and limiting effects of his symptoms is not supported by substantial evidence and thus is not specific, clear, and convincing.

The ALJ also discussed as a reason for discrediting Mr. LaPointe's statements

concerning the intensity, persistence and limiting effects of his symptoms that while attending training to be a motorcycle mechanic Mr. LaPointe lived for several months without family in Arizona, only returning home over the Christmas break. (*Id.*) The ALJ does not explain how living alone for several months is inconsistent with Mr. LaPointe's claim that he is unable to work nor does he identify any specific activity he engaged in while living alone that was inconsistent with Mr. LaPointe's statements that his pain and limitations prevent him for working.

It is important to note that Mr. LaPointe is not claiming that he can do nothing and is totally incapacitated. It is also important to note that the law does not require him to be in such a condition to be eligible for disability benefits. *Regennitter v. Commissioner*, 166 F.3d 1294, 1297 (9th Cir. 1999) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Rather, Mr. LaPointe is claiming is that his impairments leave him with a capacity that not only prevents him from performing his past relevant work but also prevents him from engaging in substantial gainful work which exists in the national economy. The Ninth Circuit Court of Appeals has repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day. *See, e.g.*, *Smolen*, 80 F.3d at 1287 n.

7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." (citation omitted)); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). Recognizing that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," the Ninth Circuit Court of Appeals has held that "[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility." *Reddick*, 157 F.3d at 722 (citations omitted); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir.2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." (citations omitted)). The Court therefore determines that this reason the ALJ gave for discrediting Mr. LaPointe's statements concerning the intensity, persistence and limiting effects of his

symptoms is not specific, clear and convincing.

The ALJ also discussed that Mr. LaPointe described riding his motorcycles, repairing his own cars, mowing the grass and trimming branches as a reason for discrediting his statements concerning the intensity, persistence and limiting effects of his symptoms. (*Id.*) In so doing, the ALJ omitted any discussion of the amount of time Mr. LaPointe spends engaging in these activities, the frequency with which he engages in these activities or the difficulties he experiences when engaging in this activities. (*Id.*) The ALJ also omitted from his discussion Mr. LaPointe's uncontroverted testimony that when he engages in an activity such as going outside or washing his bike that he can engage in such an activity for one-half an hour to 45 minutes after which time he experiences back pain to a degree that he has to "climb on his favorite recliner" until the pain goes away. (*Id.* at 108-109) In light of these omissions, the Court determines that this reason is not a specific, clear, and convincing one for discrediting Mr. LaPointe's statements concerning the intensity, persistence and limiting effects of his symptoms.

Finally, the ALJ discussed as a reason for discrediting Mr. Lapointe's statements concerning the intensity, persistence and limiting effects of his symptoms that Mr. LaPointe was able to perform light duty in the Air Force after his fall from the hangar roof in Iraq. (*Id.*) In so doing, the ALJ opted to ignore Mr. LaPointe's

uncontroverted testimony that this "light duty" consisted of Mr. LaPointe performing paperwork for two hours a day which is far less than the amount of work required to engage in substantial gainful activity. Thus, the Court determines that this reason is not a specific, clear, and convincing one for discrediting Mr. LaPointe's statements.

## B. Credit as true and remand for award of benefits

### 1. Legal standards

Since *Varney v. Sec'y of Health & Human Servs.*, 859 F. 2d 1396 (9th Cir. 1988), the Ninth Circuit Court of Appeals has applied the credit-as-true rule in more than two dozen published opinions. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). In those cases, Ninth Circuit Court of Appeals has developed a workable and stable framework for applying the credit-as-true rule. *Id.* Specifically, Ninth Circuit Court of Appeals has devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* (internal citations omitted)

In a number of cases, it has been stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when all of these conditions are met. *Id.* (internal citations omitted). However, in other cases, it has been cautioned that the credit-as-true rule may not be dispositive of the remand question in all cases. Id. (citing *Connett v. Barnhart*, 340 F.3d 871 (9th Cir.2003)). Rather, recognizing that this rule, like most, admits of exceptions meant to preserve the rule's purpose, the Ninth Circuit has noted that the credit-as-true doctrine envisions "some flexibility." *Id.* (internal citations omitted).

*Connett's* "flexibility" is properly understood as requiring courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. *Id.* at 1021. That interpretation best aligns the credit-as-true rule, which preserves efficiency and fairness in a process that can sometimes take years before benefits are awarded to needy claimants, with the basic requirement that a claimant be disabled in order to receive benefits. *Id.* Thus, when a claimant is otherwise entitled to an immediate award of benefits under the credit-as-true analysis, *Connett* allows flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act. *Id.*

## 2.     Remand for an award of benefits

Mr. LaPointe unquestionably satisfies all three conditions of the credit-as-true rule.  First, the administrative record has been fully developed and there is no need to convene further administrative proceedings.   Precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a "useful purpose" under the first part of credit-as-true analysis.  *Id.* (citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is not credible any more than Moisa, had he lost, should have an opportunity for remand and further proceedings to establish his credibility.")).

Second, as discussed above, the ALJ failed to provide specific, clear and convincing reasons for discrediting Mr. LaPointe's testimony.

Third, if Mr. LaPointe's improperly discredited testimony were credited as true, it is clear that the ALJ would be required to find Mr. LaPointe disabled on remand. The vocational expert testified that a person with the impairments Mr. LaPointe described testified to having could not work.  (Doc. 11 at 112)

Having concluded that Mr. LaPointe satisfies all three parts of credit-as-true analysis, the Court now turns to the question whether it should nonetheless exercise "flexibility" under and remand for further proceedings. Here, the answer is clearly no.

The Court has independently reviewed the entire record and has found nothing that would create doubt as to Mr. LaPointe's entitlement to the benefits he seeks. The record reflects that since his fall from the hangar on March 15, 2006, Mr. LaPointe been has afflicted with a number of severe and non-severe impairments. Even if some of his symptoms have occasionally abated for brief periods of time the Court sees no reason to doubt that he has been disabled since March 16, 2006. Thus, considering the Commissioner's arguments and independently reviewing the record, we see no basis for serious doubt that Mr. LaPointe is disabled.

## VII.  CONCLUSION

The ALJ's determination is not supported by substantial evidence and is based on legal error.

Therefore, the undersigned issues the following:

**ORDER**

1.    Mr. LaPointe's Motion for Summary Judgment is GRANTED.

2.    The Commissioner's decision denying benefits to Mr. LaPointe is REVERSED and Mr. LaPointe's claim is REMANDED for the calculation and award of benefits.

DATED this 7th day of June 2017.

John Johnston
United States Magistrate Judge